IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:14CV85** |
| vs. | |
| 2.28 ACRES OF LAND, MORE OR LESS, SITUATED IN PERKINS COUNTY, NEBRASKA, MOLLY DICKINSON, SCOTT FJELL, JULIE FJELL,  FARM CREDIT SERVICES OF AMERICA, FLCA, AGRIBANK, FCB, AND  PERSONS UNKNOWN, | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the court on a motion in limine filed by the plaintiff, United States of America (hereinafter, "the Government"), Filing No. 57.   This is a condemnation action involving 2.28 acres ("the subject property"), encompassing .22 acres upon which a Federal Aviation Administration ("FAA") Radio Communications Link Repeater ("RCLR") tower sits and additional land on which the guy-wires supporting the tower extend, located in Perkins County, Nebraska.   The government seeks to exclude the testimony of the defendants' appraiser as improper and for failure to meet the standards established under Federal Rules of Evidence 104(a) and 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

The United States filed a complaint in condemnation, estimating compensation to be $1,200.00.  Filing No. 1.  That sum was deposited in the registry of the Court for the use and benefit of the persons entitled thereto.  Filing No. 6, Order of Possession.  The record shows that the deposit was distributed in the following manner:  $600 to Molly Dickinson, $300 to Scott Fjell, and $300 to Julie Fjell.  Filing No. 17.   Molly Dickinson,

Scott Fjell and Julie Fjell (hereinafter, "the landowners") filed an answer demanding a jury trial on the issue of just compensation.  Filing No. 9.  The parties agree that the sole issue for determination is this case is the just compensation due for the taking of the subject property, measured as the fair market value of the Property on the date of taking, March 17, 2014, and the identity of the parties to whom compensation is due. Filing No. 18, Rule 26(f) report at ECF p. 3.

Both parties have submitted evidence in connection with the motion.  As relevant to this motion, the record shows that the FAA has leased the land since before 1975. Filing No. 65-1 at ECF p. 1, Supplemental Affidavit of Amy Crain ("Crain Supp. Aff.") at 1.  The landowners purchased the property in 2005.  *Id.*  The lease between the landowners and the FAA expired in 2011.  *Id.*; Filing No. 59-5 at ECF p.2, Declaration of Amy Crain at 2; *id.* at ECF pp. 4-10, Attachment B, Lease.  The FAA continued paying $875.00 per month pursuant to the lease until the filing of the condemnation action on March 17, 2014.  Filing No. 65-1 at ECF p. 2, Crain Supp. Aff. at 2.  The rent for the lease that expired in 2011 was established in reliance on a market survey prepared by Ron Finn.  *Id.*; *see* Filing No. 64-1 at ECF pp. 4-5, Declaration of Steven Davidson, Ex. A, Results of Market Survey at 1-2.  The government contends that market survey was seriously flawed.  Filing No. 65-1, Crain Supp. Aff. at 2; Filing No. 66 at ECF 9, Government Reply Brief at 9 (admitting that "The FAA made a costly error in 2006 when it mistakenly agreed to increase the land lease payment for the Tower site from a minimal amount up to $875 per month ($10,500 per year) based on a defective 'market analysis' conducted by a government contractor").   The government's estimated value of the land, as reflected in the complaint for condemnation, was based on an appraiser's

2

opinion that the value of the property was $1,200.00 "for fee simple acquisition with a highest and best use of agricultural dry land."  Filing No. 65-1, Crain Supp. Aff. at 2. The government concedes that at the time of the initiation of the condemnation proceeding, the FAA anticipated a requirement for the RCLR Facility for several years. Filing No. 65-1 at ECF p. 3, Crain Supp. Aff.  Recently, it has been determined that the tower will be decommissioned in 2017.  *Id.*

At his deposition, Kubert testified that there was demand for use of the property for a tower.  Filing No. 59-1 at ECF 54, 58, Deposition of Wayne W. Kubert at 211-213, 227-31.  The government's appraisal expert, Thomas Luhrs stated in his affidavit that two windfarms are located 60 miles from the subject property and 100 miles from the subject property, respectively, and stated that he had been told that one wind farm company had no interest in leasing or conducting wind studies on the subject property. Filing No. 59-3 at ECF 2-3, Luhrs Declaration at 2.  He also found demand for communication tower sites in southwest Nebraska was "very limited and sporadic."  *Id.* The 2006 survey on which the government relied in negotiating the lease found "explosive growth in the wireless telecommunications business" and "fierce competition," and concluded that "the need for towers will continue to grow" for a variety of new technology then taking hold.  Filing No. 64-1 at ECF p. 4, Declaration of Steven D. Davidson, Ex. A, 2006 Market Survey at 1 (also noting that "[c]ommunication towers are used to facilitate the transmission of cellular/voice messaging, radio, TV, CATV, emergency medical service (EMS), fire and police radio networks, paging, global positioning satellite (GPS) and other signals such as those employed by FAA").

3

In connection with this action, the landowners engaged Wayne Kubert to conduct an appraisal of the Land, including the Tower Site.   Filing No. 58-2 at ECF p. 2, Declaration of Laurie M. Barrett, Attachment A, Wayne Kubert, MAI Appraisal at 1. Kubert is a MAI certified and licensed appraiser with more than 30 years' experience in Nebraska, including substantial experience with agricultural properties.   *Id.* at ECF p. 84.  He is a former President of the Nebraska Chapter of the Appraisal Institute and of the Lincoln Board of Realtors.   *Id.* at ECF p. 86.   In his appraisal, Kubert considered the tower to be part of the highest and best use of the land because "the Federal Government wants to continue the lease or take the land by condemnation for the continued use."   Filing No. 58-2 at ECF p 43, Kubert Appraisal at 43.  He also compared market leases for wind towers and communication towers.   *Id.* at ECF p. 61.

The government moves to exclude Kubert's expert report.   It argues that the tower site should be excluded as part of the highest and best use of the subject property because the landowners have not established a private demand for the tower site. Further, it urges the court to give no weight to the 2006 'Market Analysis' and argues the government's improvements should be excluded in estimating market value.

II.     LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: "(1) the evidence must be based on scientific, technical or other specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must have sufficient expertise to assist the trier of fact; and (3) the evidence must be reliable or trustworthy."   *Kudabeck v. Kroger Co.*, 338 F.3d 856, 859 (8th Cir. 2003).   Expert testimony assists the trier of fact when it provides information

beyond the common knowledge of the trier of fact.  *Id.* at 860.  When faced with a proffer of expert testimony, trial judges are charged with the "gatekeeping" responsibility of ensuring that all expert evidence admitted is both relevant and reliable.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *United States v. Wintermute*, 443 F.3d 993, 1000 (8th Cir. 2006).  A trial court is given wide latitude in determining whether an expert's testimony is reliable. *See Kumho Tire,* 526 U.S. at 152.

Proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702:    first, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact; second, the proposed witness must be qualified to assist the finder of fact; and third, the proposed evidence must be reliable or trustworthy in an evidentiary sense.  *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (noting district court's gatekeeper role when screening expert testimony for relevance and reliability).  Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact.  *Kudabeck,* 338 F.3d at 860.  The district court's gatekeeper function applies to all expert testimony, not just testimony based in science.  *Id.*

Under *Daubert*, district courts apply a number of nonexclusive factors in performing this role.  *Lauzon*, 270 F.3d at 686-87.  These are:  whether the theory or technique can be and has been tested; whether the theory or technique has been subjected to peer review and publication; the known or potential rate of error; whether the theory has been generally accepted; whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert

ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.  *Id.* at 686-87.  "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject Daubert factors as the particular case demands."  *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005).

The proponent of expert testimony bears the burden of providing admissibility beyond a preponderance of the evidence.  *Lauzon*, 270 F.3d at 686.  When the application of a scientific methodology is challenged as unreliable under *Daubert* and the methodology itself is otherwise sufficiently reliable, outright exclusion of the evidence is "warranted only if the methodology was so altered by a deficient application as to skew the methodology itself."  *United States v. Gipson*, 383 F.3d 689, 697 (8th Cir. 2004) (brackets omitted) (quoting *United States v. Martinez*, 3 F.3d 1191, 1198 (8th Cir. 1993)).

In the Eighth Circuit, "cases are legion that, correctly under Daubert, call for the liberal admission of expert testimony."  *Johnson v. Mead Johnson & Co., LLC*, 754 F. 3d 557 (8th Cir. 2014).   District courts are admonished "not to weigh or assess the correctness of competing expert opinions."  *Id.*   Rather, expert testimony should generally "be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset."  *Id.*  "Any doubts regarding expert testimony 'should generally be resolved in favor of admissibility.'"  *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011) (quoting *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 954 (8th Cir. 2000)).  A "jury, not the trial court should be the one 'to decide among the conflicting views of different reports."  *Johnson*, 754 F.3d

6

at 564.  In condemnation cases, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

The Fifth Amendment guarantees a landowner's right to just compensation for the Government's taking of private property for public use.  *Id.*  The Supreme Court has interpreted the just compensation clause to require that condemnees receive the value of the highest and best use for which the property is adaptable in the reasonably near future from the vantage point of the date of taking.  *Olson v. United States*, 292 U.S. 246, 255 (1934).  The Supreme Court "has repeatedly held that just compensation normally is to be measured by 'the market value of the property at the time of the taking.'"  *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).  A property's fair market value is determined through identification of the property's highest and best use.  *Olson,* 292 U.S. at 257.  Under that standard, "the owner is entitled to receive 'what a willing buyer would pay in cash to a willing seller' at the time of the taking."  *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979) (quoting *United States v. Miller*, 317 U.S. 369, 374 (1943)).

The distribution of responsibilities between the judge and jury in an eminent domain proceeding is governed by Fed. R. Civ. P. 71.1.  Under that Rule, the court tries all issues, including compensation, except that compensation must be determined by a jury when a party demands one.  *See* Fed. R. Civ. P. 71.1(h)(1)(B).  "It follows that it is for the judge to tell the jury the criteria it must follow in determining what amount will

7

constitute just compensation." *United States v. Reynolds*, 397 U.S. 14, 21 (1970).  The gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1.  *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

Under Eighth Circuit precedent, although the jury resolves the valuation issue, the trial judge must screen the proffered best and highest uses and "exclude from jury consideration those which have not been demonstrated to be practicable and reasonably probable uses." *United States v. 341.45 Acres of Land*, 633 F.2d 108, 111–112 (8th Cir. 1980).; *United States of America v. 158.24 Acres of Land*, 696 F.2d 559, 563 (8th Cir. 1982) (stating the trial judge "should decide whether the landowner had produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future").  Accordingly, the landowner must show, by a preponderance of the evidence, that the jury could reasonably conclude that the land is physically adaptable to the proposed use, and also that there is a need or demand for such use either in fact, at the time of the taking, or in the reasonably near future.  *United States v. 27.93 Acres of Land*, 924 F.2d 506, 512–13 (3d Cir. 1991).  There must be more than a mere theoretical demand for the proposed use.  *Olson*, 292 U.S. at 256; *341.45 Acres of Land*, 633 F.2d at 113.  A property's current use can be considered in determining market value.  *United States v. 158.24 Acres of Land,* 696 F. 2d 559 (8th Cir. 1982).

The trial judge's screening of the evidence, however, "does not require an extensive and detailed review of all the evidence." *See 341.45 Acres*, 633 F.2d at 111. "'Rather, the judge need only find that there is credible evidence' of the proposed

highest and best use." *Id.* (agreeing with the Fifth Circuit's holding in *Monroe*, 605 F.2d at 817, cite that "the issue of highest and best use could not be characterized as a 'preliminary issue' as was the 'scope-of-the-project' issue in Reynolds" and declining to hold that the highest and best use issue was solely for the judge).

When a party presents credible evidence that the legal restrictions attaching to the property may be changed, the question goes to the jury. *See United States v. 341.45 Acres of Land*, 633 F.2d at 112. Once admitted, "[t]he weight to be given evidence of reasonable probability," and "whether adaptability and probability affect market value," are questions of fact to be resolved by the jury. *United States v. 100 Acres of Land*, 468 F.2d 1261, 1267-68 (9th Cir. 1972) ("It is not uncommon for expert witnesses to disagree in regard to the highest and best use to which condemned property may be put and as to values based on their respective opinions."). Ultimately, this is a question to be decided by the trier of fact. *Id.* at 1266; *United States v. 174.12 Acres of Land*, 671 F.2d 313, 316 (9th Cir.1982) ("Evidence of reasonable probability of uses [is] admissible and the weight of such evidence [is] to be considered by the trier of fact."). "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." *Olson*, 292 U.S. at 257.

Some evidence "cannot be evaluated accurately or sufficiently by the trial judge" in the procedural environment of a ruling on a motion in limine. *Jonasson v. Lutheran*

*Child and Family Servs.*, 115 F.3d 436, 439 (8th Cir. 1997).  To the extent that a party challenges the probative value of the evidence, an attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve.  *United States v. Beasley*, 102 F.3d 1440, 1451 (8th Cir. 1996).

> III.   DISCUSSION

The court first finds the landowners have satisfied the threshold burden of presenting credible evidence that use of the land as a leasehold for a cell tower, wind farm, etc., is a potential use that is reasonably practicable and reasonably probable within the near future.  Evidence of that potential use is more than speculative or conjectural—it is based on the land's current use, the market survey, and on Dickinson's testimony that he had been contacted by wind farm companies.  That evidence is sufficient evidence of a demand for a tower site.  The government's argument that the 2006 market survey is flawed is a disputed fact that relates to the ultimate issue in the case.  Further, the government's contention that the tower is scheduled to be decommissioned does not appear to bear on the issue of the valuation of the property at the time of the taking.

Having performed the initial screening of the evidence as satisfactory credible evidence of the highest and best use, the court next finds that the proposed testimony satisfies the requirements of admissibility under *Daubert*.  There is no doubt that the specialized knowledge of a real estate appraiser would be helpful to the jury in this condemnation case.  In fact, such testimony is essential, as the only issue is the amount of compensation to which the landowners are entitled by reason of the taking.

The court finds that the landowners' expert is qualified to render an opinion. His qualifications are not seriously disputed. He is properly licensed, is an MAI-qualified appraiser, and has more than 30 years' experience. He based his valuation on assumptions and methodologies generally accepted in the field of appraisal of real property and those methods have been tested and subjected to peer review. Kubert's opinion is properly supported by two well-established appraisal methods, a market approach analyzing comparable properties, and an income approach evaluating the income-producing features of the property both before and after the taking. Kubert's fundamental methodology is typical and routine in the course of appraising real property.

Whatever flaws the Government might see in Kubert's application of those established approaches to the facts of this case is a matter for cross-examination. The government has not shown that alternative uses of the land for cell or communications towers would be purely speculative or conjectural or that Kubert's consideration of the government improvements placed on the leased property was improper as a matter of law. There are at least disputes of fact on the issues. The government's criticisms go more to the weight than the admissibility of the evidence. None of the government's criticisms amount to a fundamental failure in the underlying basis for the opinion so as to render exclusion of the testimony altogether.

In any event, any danger that the expert's testimony will improperly influence the jury in the event the expert's opinions are ultimately shown to be speculative or conjectural can be remedied by striking the testimony and providing the jury with an appropriate cautionary instruction.

The court finds the government has not shown as a matter of law that the expert's testimony is so deficient that it should not be considered by the jury. Accordingly, the court finds the government's motion in limine should be denied.

IT IS ORDERED:

1.      The government's motion in limine, Filing No. 57, is denied.

Dated this 27th day of October, 2015.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

12